Thos. E. Scofield and Henry L. Shenier, both of Kansas City, Mo., for plaintiff.

Arthur C. Brown, of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is a suit for alleged infringement of letters patent numbered 1,841,719 and 1,855,544. The one is a device patent and the other is a method patent. The device is a means, as stated in the patent, "whereby trousers, when wet washed or otherwise cleaned, can be stretched to their natural width and length."

It consists of an upright support with a head or arm extending from such support and equipped for multiple expansion and with such attachments as would enable the operator to stretch the leg of a pair of

### ASHBY v. CLEANERS SPECIALTIES, Inc.

No. 2883.

District Court, W. D. Missouri, W. D.

Feb. 17, 1940.

trousers longitudinally as well as laterally or transversely.

The device was also equipped with instrumentalities or means for supplying steam, a necessary agency in such operations, and also a steam drying tube or means for preventing condensation of the steam. Among other objects of the patent was one to save time and labor and obtain a result in one operation that previously had required several independent successive operations. The method patent involves the process described in the device, and as stated in the claims, and particularly Claim 3, "the method of stretching tubular garments, which consists in discharging wet steam within the garment and at the same time stretching the same in two directions."

The alleged offending device was manufactured pursuant to patent numbered 2,-092,278 and granted several years after the issuance of plaintiff's patent. The latter is an improvement upon plaintiff's patent in the particulars that it consists of two arms or heads extending from the support to accommodate both legs of a pair of trousers, and, moreover, the arm or head is expanded and enlarged at or near the support, so as to receive, stretch and expand the waist as well as the seat and thigh portions of the trousers. The identical processes are followed as in plaintiff's method, and, moreover, the stretching longitudinally as well as transversely is accomplished upon identical principles but with somewhat varying structures. As an illustration, upon plaintiff's device the arm or head is expanded on both sides, whereas, in the defendant's structure, the expansion is only from one side. Each obtains, however, identical results. It will be noted that several elements are combined in the patents.

The defendant by its answer challenged the validity of each of said patents and asserted both prior patents and prior use. By its answer many patents are cited as having covered the identical features or elements involved in plaintiff's device and the employment of identical processes covered by his method. These have been carefully examined.

The question presented by industrious counsel in elaborate and well-written briefs is one most difficult of solution. In order properly to decide the case it is necessary to recur to fundamental principles of the patent law. This will be done and same will be used as postulates and as a preliminary to discussion of the applicable law of the case.

██ 1. As aptly stated in Electrons, Inc., v. Coe, 69 App.D.C. 181, 99 F.2d 414, loc. cit. 422: "The general principles applicable to the question whether invention exists in a combination of elements are briefly: The fact that all the elements entering into a combination are old does not necessarily negative the existence of invention. * * * Such a combination may be patentable invention if it produces a new result, or an old result in a new or more efficient way. * * * The fact that a combination later appears to be a simple one does not necessarily negative the presence of a high degree of inventive genius."

This same principle was also announced by chosen language in Independent Oil Well Cementing Co. v. Halliburton et al., 10 Cir., 54 F.2d 900, loc. cit. 905. The language used was: "With respect to the result produced, it is not essential that it be a wholly new result, but it is sufficient if an old result is effected in a more facile, economical, or efficient way."

2. In the light of the foregoing which are, or should be, both an illumination and a direction on a dark and confused road, a discussion may now be undertaken of prior patents as well as prior practice.

It cannot be controverted but that the use of steam was familiar practice for effectively pressing and shaping garments, whether trousers or other kinds or types of garments. The patent most relied upon by the defendant as a bar to the validity of those in suit was that granted to T. Hlubucek, October 16, 1917, and being numbered 1,243,176. That was a device designated as "new and useful improvements in trousers-steamers." It was described as a device "comprising a casing of trouser form having expansible leg portions arranged with perforations, spring means for expanding the same, perforated pipes arranged within the device, and a steam drying coil carried by the said pipes."

A careful reading of the patent fails to disclose that it did more than to expand or stretch trousers laterally by the use of a spring. The only object of the stretching was to help the form give shape to the trousers. It was not the object to enlarge, and, moreover, it did not provide for longitudinal stretching at the same time

that the trousers were laterally stretched or simply expanded.

The same thing might be said of the prior practice involving the use of a steam board. According to the evidence the use of a steam board primarily designed for pressing was sometimes employed in stretching trousers. This was done by drawing them over the steam board, and, necessarily, the effect was to stretch them longitudinally as well as transversely. This was a most inefficient and ineffective way, and, moreover, the steam could be used only one side at a time.

The discussion might be prolonged with respect to other patents and prior practice, but the foregoing is typical.

■ 3. The Supreme Court of the United States, in Diamond Rubber Company of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, loc. cit. 442 and 443, 31 S.Ct. 444, loc. cit. 451, 55 L.Ed. 527, quite fully covered an identical situation. The court said: "To what quality the utility of the tire may be due will bear further consideration, if for no other reason than the earnest contentions of counsel. Aside from those contentions and the ability by which they are supported, we might point to what it does as a demonstration of its difference from all that preceded it, that there is something in it, attribute or force, which did not exist before,—something which is the law of its organization and function, and raises it above a mere aggregation of elements to a patentable combination."

Adverting to either of the patents in suit, as said by the court, "there is something in it * * * which did not exist before," that is to say, "something which is the law of its organization and function, and raises it above a mere aggregation of elements to a patentable combination."

The attributes of these patents are the practically concurrent stretching of the trousers in two directions at the same time the steam is applied. This idea was not even approached in other patents for the reason that such patents had for their object stretching or expansion, not for enlargement, but solely and alone for the purpose of restoring shape and eliminating bagginess and restoring creases.

A combination of old elements not forming a patentable combination is found in Jones-McLaughlin v. Amerada Petroleum Corporation, 10 Cir., 47 F.2d 828, loc. cit. 830, where the court borrowed an illustration previously used by Judge Hook of this circuit in Moore v. Saunders, 247 F. 314. That illustration was the one where the elements were successively co-operative and the court said that in such case it was like the coach journey from London to Bath: Horses were used from London to Maidenhead; and new horses picked up the burden and carried it to Newbury, and so on to destination. Such is not the case under consideration.

■ The patents not only appear to be valid independently of all presumptions, but in a doubtful case the court would have a right to resort to the presumption of the law that the device was a novel and useful invention or otherwise a monopoly would not have been accorded by the department. Dovan Chemical Co. v. Corona Cord Tire Co., 3 Cir., 16 F.2d 419.

■■ In view of the above, the decree in this case should be for the plaintiff. Accordingly, such will be prepared by counsel for plaintiff and presented for approval and entry.

The following findings of fact are now made:

1. Plaintiff is the owner of the letters patent Nos. 1,841,719 and 1,855,544 in suit.

2. The defendant Cleaners Specialties, Inc., is a corporation of the state of Missouri and has infringed said letters patent by making and selling devices in accordance with the claims thereof in suit, and is also guilty of contributory infringement for inducing others to use the method and also abetting the use and practice of the method set forth in the claims of patent numbered 1,855,544 even after notice of December 10, 1936.

3. The said patents are valid and none of the prior art cited in the answer of defendant discloses or teaches either the method or the apparatus of the patents in suit.

### Conclusions of Law.

The plaintiff is entitled to a decree upholding the validity of his patents and for an accounting against the defendant from and after December 10, 1936, and to an injunction from further infringement of the claims of said letters patent mentioned in his petition.